**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ONYX ENTERPRISES CANADA INC., <br><br> Plaintiff, <br><br> v. <br><br> STANISLAV ROYZENSHTEYN *et al.*, <br><br> Defendants. | Civil Action No. 23-02913 (GC) (JBD) <br><br> **MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Defendants Daniel Ginzburg and the Ginzburg Law Firm, P.C.'s (the Ginzburg Defendants) Motion to Dismiss Plaintiff Onyx Enterprises Canada, Inc.'s (OEC) Second Amended Complaint (SAC) (ECF No. 85) pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6). (ECF No. 97.) OEC opposed, and the Ginzburg Defendants replied. (ECF Nos. 104, 105.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, the Ginzburg Defendants' Motion is **GRANTED in part** and **DENIED in part**.

I.     **BACKGROUND**

    A.     **Factual Background**[1]

The Court assumes the parties' familiarity with the underlying facts, which are set forth in greater detail in the Court's prior opinion addressing two Motions to Dismiss Plaintiffs' First Amended Complaint (FAC)—one brought by the Ginzburg Defendants, and the other brought by Defendants Stanislav Royzenshteyn and Roman Gerashenko. *See Onyx Enters. Canada, Inc. v. Royzenshteyn*, Civ. No. 23-02913, 2025 WL 62834 (D.N.J. Jan. 8, 2025). The Court outlines only the factual background necessary to resolve the instant Motion.

Royzenshteyn and Gerashenko founded Onyx Enterprises Int'l Corp. (Onyx)—an online distributor of motor vehicle parts—in 2008. (ECF No. 85 ¶ 15.) By 2014, Onyx was at risk of insolvency, and Royzenshteyn and Gerashenko (1) began to prepare for bankruptcy, and (2) retained an outside investment firm to find an investor or acquiror for Onyx. (*Id.* ¶¶ 19-20.) In 2015, OEC invested $5,000,000 in Onyx, acquiring a 52% stake in the company. (*Id.* ¶¶ 1, 30.) This investment (the 2015 Transaction) was memorialized in a series of five contracts including, as relevant here, the Investor Rights Agreement and the Security Agreement. (*Id.* ¶ 26.) *See also Onyx Enters. Canada, Inc.*, 2025 WL 62834, at *1-2 (summarizing the 2015 Transaction agreements). In addition to these agreements, Onyx amended its Certificate of Incorporation (COI) and Bylaws. (*Id.* ¶ 24.)

OEC alleges that Gerashenko and Royzenshteyn—who were the only Onyx board members and stockholders when they approved the 2015 Transaction—were unsatisfied with the deal, and thus "began to scheme their way out of the 2015 Transaction." (*Id.* ¶¶ 2, 24.) In 2016,

---

[1]     On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

Gerashenko and Royzenshteyn enlisted the help of the Ginzburg Defendants to unwind the 2015 Transaction, even though the Ginzburg Defendants were already representing Onyx in other matters. (*Id.* ¶¶ 59, 60.) OEC alleges that Gerashenko and Royzenshteyn first sought advice from the Ginzburg Defendants regarding "their personal demands for drastically disproportionate increases to their compensation." (*Id.* ¶ 61.) OEC claims that the Ginzburg Defendants billed and were paid by Onyx for the advice provided to Royzenshteyn and Gerashenko. (*Id.* ¶ 63.)

OEC contends that the Ginzburg Defendants then "moved from simply providing conflicted advice to Gerashenko and Royzenshteyn regarding their personal employment agreements, to evaluating ways to seize control of Onyx." (*Id.* ¶ 62.) The Ginzburg Defendants allegedly "billed Onyx thousands of dollars in fees and expenses related to reviewing corporate documents and legal research directly related to trying to undo the 2015 Transaction." (*Id.* ¶ 63.) Moreover, OEC claims that the Ginzburg Defendants "undertook this representation by wrongfully utilizing information and materials that [they] received confidentially during [their] representation of Onyx." (*Id.*) OEC avers that the Ginzburg Defendants did not obtain a conflict waiver from Onyx in order to represent Gerashenko and Royzenshteyn. (*Id.* ¶ 64.)

In 2018, the Ginzburg Defendants filed a shareholder lawsuit in New Jersey state court (the State Court Litigation) on behalf of Royzenshteyn and Gerashenko and against various individuals associated with OEC. (*Id.* ¶ 66.) OEC alleges that the "explicit initial purpose of the State Court Litigation was to unwind the 2015 Transaction." (*Id.*) OEC alleges that the Ginzburg Defendants' inquiry into the claims brought in New Jersey state court was paid for with "money that should have been paid to OEC as dividends and distributions" under various agreements. (*Id.* ¶ 68.) Moreover, the State Court Litigation—which OEC characterizes as a sham—had "devastating effects on Onyx's business" and "materially interfered with OEC's rights under the 2015

Transaction." (*Id.* ¶¶ 69, 327.) During the State Court Litigation, the Ginzburg Defendants filed an application for a Temporary Restraining Order (TRO) on behalf of Onyx as a nominal defendant, seeking to enjoin OEC from taking certain actions related to the operations of Onyx. (ECF No. 85-4.[2])

### B. Procedural Background[3]

On May 27, 2023, OEC brought this action in federal court based on diversity jurisdiction against Royzenshteyn and Gerashenko (as former directors and officers of Onyx), and the Ginzburg Defendants (as counsel for Royzenshteyn and Gerashenko in the State Court Litigation).[4] On July 12, 2023, OEC filed its First Amended Complaint (FAC), which asserted 13 causes of action. In addition to several causes of action pled only against Royzenshteyn and Gerashenko,[5] the FAC included the following causes of action against all Defendants: tortious interference with various contracts, civil conspiracy, aiding and abetting, and prima facie tort. The Ginzburg Defendants moved to dismiss.[6] (ECF No. 62.)

---

[2]   The application for a TRO is attached as an exhibit to the SAC and therefore may properly be considered by the Court. *See Colony Ins. Co. v. Aspen Specialty Ins. Co.*, Civ. No. 20-09446, 2021 WL 1589355, at *3 n.1 (D.N.J. Apr. 23, 2021) ("Courts are permitted to consider exhibits attached to a complaint when deciding a motion to dismiss." (citing *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993))).

[3]   The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

[4]   The parties in this case are involved in another federal action before this Court, which Royzenshteyn and Gerashenko brought against OEC as well as other defendants in 2022. *See Royzenshteyn v. Onyx Enterprises Canada, Inc.*, Civ. No. 22-7514 (D.N.J. Dec. 27, 2022).

[5]   OEC brought the following claims against Royzenshteyn and Gerashenko: breach of fiduciary duty, breach of various contracts related to the 2015 Transaction, and breach of the implied covenant of good faith and fair dealing. *See Onyx Enters. Canada, Inc.*, 2025 WL 62834, at *4.

[6]   Royzenshteyn and Gerashenko separately moved to dismiss. (ECF No. 61).

On January 8, 2025, the Court granted in part and denied in part Defendants' Motions to Dismiss. As for the claims against the Ginzburg Defendants: *first*, the Court dismissed OEC's tortious interference with contract claims without prejudice because OEC failed to plausibly plead malice; *second*, the Court dismissed OEC's civil conspiracy claim without prejudice to the extent it relied on Royzenshteyn and Gerashenko's alleged breaches of fiduciary duty and the Ginzburg Defendants' tortious interference with OEC's contracts, but the Court allowed the claim to proceed to the extent it relied on Royzenshteyn and Gerashenko's alleged tortious interference with contract; *third*, the Court dismissed OEC's aiding and abetting claim without prejudice because the breach of fiduciary duty and tortious interference claims upon which it rested were also dismissed; and *fourth*, the Court dismissed OEC's prima facie tort claim with prejudice, reasoning that OEC could not rely on a claim for prima facie tort as a "catch-all" when the conduct complained of fell within more traditional tort claims already pled. *See Onyx Enters. Canada, Inc.*, 2025 WL 62834, at *12-18. The Court granted OEC leave to file a SAC. (ECF No. 82.)

On February 7, 2025, OEC filed the SAC (ECF No. 85), which is now the operative pleading. The SAC includes the following claims against the Ginzburg Defendants: three claims for tortious interference with the contracts governing the 2015 Transaction (Counts Four, Five, and Six); civil conspiracy (Count Seven); and aiding and abetting (Count Eight). On March 14, 2025, the Ginzburg Defendants filed the instant Motion to Dismiss the SAC under Rule 12(b)(6).[7]

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether

---

[7] Separately, Royzenshteyn and Gerashenko filed an Answer to the SAC. (ECF No. 98.)

the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

In deciding a Rule 12(b)(6) motion, the court can only consider "the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). A court may also consider any document "integral to or explicitly relied upon in the complaint" when ruling on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### III.     DISCUSSION

#### A.     Conflict of Interest

The Ginzburg Defendants first argue that OEC has abandoned any claim that the Ginzburg Defendants were conflicted in their representation of Royzenshteyn and Gerashenko in the State Court Litigation based on the Ginzburg Defendants' prior representation of Onyx. (ECF No. 97-

2 at 12-13.[8]) According to the Ginzburg Defendants, OEC omitted from the SAC several prior allegations that the Ginzburg Defendants obtained confidential information while representing Onyx and subsequently took positions adverse to Onyx. (ECF No. 97-1 at 13.) Moreover, the Ginzburg Defendants contend that any remaining allegations regarding a conflict are insufficient, as "Ginzburg did not file suit against Onyx, but, rather, filed a lawsuit against OEC and others, which included derivative counts brought on behalf of Onyx." (*Id.*) Finally, the Ginzburg Defendants argue that the SAC fails to allege that the Ginzburg Defendants learned any information in connection with its representation of Onyx that it later used in the State Court litigation. (*Id.*)

In opposition, OEC argues that while it removed certain allegations that the Court concluded were shielded by the litigation privilege, "many facts demonstrating Ginzburg's misconduct remain" in the SAC. (ECF No. 104 at 12.) OEC notes, for example, that the SAC alleges that "Ginzburg (at times) simultaneously represented both Onyx (which was 52% owned by OEC) and his Co-Conspirators, and (ii) Ginzburg used confidential information gained by representing Onyx to facilitate his scheme of conspiracy with [Royzenshteyn and Gerashenko] to the detriment of both Onyx and OEC." (*Id.* at 15.)

The Court disagrees that OEC has abandoned its allegations that the Ginzburg Defendants were conflicted in the State Court Litigation. (*See, e.g.*, ECF No. 85 ¶ 165 ("During the foregoing and other work Ginzburg performed during his representation of and payment by Onyx, he obtained highly confidential information from Onyx, to which he would not otherwise have been entitled and which he subsequently used in furtherance of his tortious activities[.]"); ¶ 168

---

[8] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

7

("Ginzburg's active and conflicting representation of Royzenshteyn and Gerashenko was to the material detriment of Onyx, his client. Ginzburg's willingness to act against Onyx's interests to harm OEC again underscores his bad faith and malicious attempts to interfere with OEC's interests under the 2015 Transaction.").)

Nevertheless, the Court finds that OEC's allegations regarding the Ginzburg Defendants' conflict of interest are too vague and conclusory to state a claim for relief. Indeed, OEC concedes that the Ginzburg Defendants' "obvious ethical conflict, while alarming, is a matter for the bar and does not itself form the basis for OEC's claims." (ECF No. 104 at 11.) *See also Pollen v. Comer*, Civ. No. 05-1656, 2007 WL 1876489, at *10 (D.N.J. June 27, 2007) ("Under New Jersey law, a violation of the Rules of Professional Conduct 'do[es] not *per se* give rise to a cause of action in tort.'" (quoting *Sommers v. McKinney*, 670 A.2d 99, 105 (N.J. Super. Ct. App. Div. 1996)). OEC also alleges that the Ginzburg Defendants obtained highly confidential information from Onyx to which [they] would not otherwise have been entitled and which [they] subsequently used in furtherance of [their] tortious activities." (ECF No. 85 ¶ 165.) But beyond OEC's vague and conclusory allegation that the Ginzburg Defendants learned confidential information from Onyx that they later used in the State Court Litigation, OEC alleges no additional facts as to what information was actually obtained and used to OEC's detriment. This is insufficient to state a claim for tortious interference. *See, e.g.*, *Knierim v. Siemens Corp.*, Civ. No. 06-4935, 2008 WL 906244, at *18 (D.N.J. Mar. 31, 2008) ("[The] plaintiffs do not specifically allege what confidential information, if any, defendants revealed, and to whom. . . . [T]his vague allegation cannot support their tortious interference claims."); *see also Oakwood Lab'ys, LLC v. Thanoo*, Civ. No. 17-05090, 2018 WL 2973384, at *6 (D.N.J. June 12, 2018) ("[I]t is unclear exactly what [the p]laintiff is alleging was misappropriated. Consequently, it is unclear whether a contract was

8

breached or interfered with."). As a result, the Court finds that OEC's allegations concerning the Ginzburg Defendants alleged conflict of interest are insufficient to state a plausible claim for relief.

**B.    Litigation Privilege**

The Ginzburg Defendants next argue that the litigation privilege bars OEC's claims to the extent they stem from filings in the State Court Litigation. (ECF No. 97-2 at 15.) As the Court previously outlined, "[t]he New Jersey litigation privilege ensures that '[s]tatements by attorneys, parties and their representatives made in the course of judicial or quasi-judicial proceedings are absolutely privileged and immune from liability.'" *Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 901 F. Supp. 2d 509, 523 (D.N.J. 2012) (quoting *Peterson v. Ballard*, 679 A.2d 657, 659 (N.J. Super. Ct. App. Div. 1996)). The privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Id.* (quoting *Hawkins v. Harris*, 661 A.2d 284, 289 (N.J. 1995)).

New Jersey's litigation privilege is "expansive," extending to statements made beyond the courtroom, such as private conferences with an attorney regarding litigation. *Id.* (citing *Loigman v. Twp. Comm. of Twp. of Middletown*, 889 A.2d 426, 433 (2006)); *Middlesex Concrete Prods. & Excavating Corp. v. Carteret Indus. Ass'n*, 172 A.2d 22, 25 (N.J. Super. Ct. App. Div. 1961); s*ee also Mac Naughton v. Harmelech*, 2018 WL 480565, at *2 (N.J. Super. Ct. App. Div. Jan. 19, 2018) (finding that the litigation privilege "certainly protects a litigant engaged in a private conference with an attorney regarding litigation" (internal quotation marks omitted)).

The litigation privilege also protects "statements made in the course of judicial proceedings even if the words are written or spoken maliciously, without any justification or excuse, and from personal ill will or anger." *DeVivo v. Ascher*, 550 A.2d 163, 165 (N.J. Super. Ct. App. Div. 1988). "[T]he trouble with privileges is that they are granted to good and bad alike." *Ritger v. Gatlin*,

9

Civ. No. 09-2688, 2010 WL 1490582, at *3 (D.N.J. Apr. 13, 2010) (quoting *Hawkins*, 661 A.2d at 287). But this approach is necessary for an attorney to "enjoy the utmost freedom of communication to secure justice for his client." *DeVivo*, 550 A.2d at 165. Indeed, the litigation privilege "grows out of the strong public policy 'that persons in such circumstances be permitted to speak and write freely without the restraint of fear'" of tort liability. *Mac Naughton*, 2018 WL 480565, at *2 (quoting *Middlesex Concrete Prods. & Excavating Corp.*, 172 A.2d at 25).

Furthermore, "[c]ourts do not make paper-fine distinctions when analyzing whether a potentially privileged statement 'relates' to a judicial proceeding." *Id.* (quoting *Kanengiser v. Kanengiser*, 590 A.2d 1223, 1233 (N.J. Super. Ct. Law Div. 1991)). Relevancy is interpreted "broadly and liberally." *DeVivo*, 550 A.2d at 167 (reasoning that a statement is related "if it has any bearing upon the subject matter of the litigation" and is unrelated only if it is "so wanting in relation to the subject matter of the controversy as that no reasonable man can doubt its irrelevancy and impropriety") (internal citation and quotation marks omitted). "[O]therwise[,] the speaker or writer would have to decide the question of [immunity] at his peril, and the sweep of the privilege would be inhibited at the cost of the policy considerations which give it life." *Id.* (quoting *Fenning v. S.G. Holding Corp.*, 135 A.2d 346, 351 (N.J. Super. Ct. App. Div. 1957)).

In the Court's prior Opinion, it held that many of OEC's allegations fell outside of the scope of the litigation privilege. Indeed, the Court concluded that "the core of most of OEC's alleged harms related to the State Court Litigation is the litigation's continued existence and the effect of its pursuit on OEC, not statements made in any filing or to achieve the objects of that litigation." *Onyx Enters. Canada, Inc.*, 2025 WL 62834, at *11. But the Court also held that certain allegations were barred by the litigation privilege, including OEC's reliance on "statements made to enjoin OEC from foreclosing on the Collateral under the COI and Security Agreement" and "statements

10

made in the state court complaint or in the State Court Litigation using information confidential to Onyx." *Id.* at *12. Even so, the Court declined to dismiss any of OEC's claims based on the litigation privilege, as no claims rested solely on allegations barred by the privilege. *Id.*

In the SAC, OEC's claims rest in part on allegations that the Ginzburg Defendants, as counsel for Royzenshteyn and Gerashenko, filed a shareholder derivative action and an application for a TRO in state court to "enjoin OEC from exercising its redemption rights under the Security Agreement." (ECF No. 85 ¶ 329.) OEC contends that these allegations fall outside of the scope of the Court's litigation privilege ruling because the Ginzburg Defendants filed the suit and application for a TRO on behalf of Onyx, a party the Ginzburg Defendants did not represent. (ECF No. 104 at 16.) Thus, OEC argues that the Ginzburg Defendants' actions purporting to be on behalf of Onyx—rather than on behalf of Royzenshteyn and Gerashenko—are not shielded by the litigation privilege, "as there cannot be any privilege for unauthorized communications made by an attorney on behalf of a non-party." (ECF No. 104 at 16-17.)

According to the Ginzburg Defendants, there is no "exception to the litigation privilege for shareholder derivative claims." (ECF No. 97-2 at 16.) The Ginzburg Defendants also argue that "[t]he application of the privilege is not conditioned upon the legal correctness of the statement at issue, nor, in the case of an attorney asserting a shareholder derivative action, on the legal capacity of the shareholders to assert the derivative action at issue." (*Id.*)

The Court is unpersuaded by OEC's arguments. As this Court previously held, "[t]o the extent that OEC's tortious interference claims arise from the Ginzburg Defendants' seeking to enjoin OEC from acting in the State Court Litigation, . . . the litigation privilege bars that allegation." *Onyx Enters. Canada, Inc.*, 2025 WL 62834, at *13 n.12. And the fact that the Ginzburg Defendants sought relief on behalf of Onyx as a nominal defendant does not change this

11

Court's conclusion that the privilege would still apply to filings and statements made by the Ginzburg Defendants in the State Court Litigation. Indeed, New Jersey law permits shareholders, like Royzenshteyn and Gerashenko, to bring a derivative action on behalf of a corporation. *See In re PSE & G S'holder Litig.*, 801 A.2d 295, 307 (N.J. 2002); *see also In re Cognizant Tech. Sols. Corp. Derivative Litig.*, 101 F.4th 250, 257 (3d Cir. 2024) ("In a shareholder derivative suit, the plaintiff seeks to bring a claim that belongs to the corporation on the corporation's behalf."); *Musheno v. Gensemer*, 897 F. Supp. 833, 835 (M.D. Pa. 1995) ("In a derivative action, suit is brought on behalf of a corporation, by its shareholders. The defendants are generally corporate officers and directors, as well as the corporation itself. However, the corporation is merely a 'nominal' defendant, and in fact stands to receive a substantial benefit if the plaintiffs/shareholders are successful." (citing *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1315 (3d Cir.1993))). OEC cites no case which stands for the proposition that the litigation privilege does not apply in shareholder derivative actions. Nor does OEC offer any compelling basis for the Court to so hold.

At bottom, the application for a TRO that the Ginzburg Defendants filed in the State Court Litigation plainly seeks to protect the rights of their clients—Royzenshteyn and Gerashenko—who were 48% shareholders of Onyx, along with the rights of Onyx itself. (*See* ECF No. 85-4 at 174 (brief in support of TRO) ("Unless the Court immediately awards the injunctive relief sought through this Application, Onyx, a New Jersey Corporation with more than 1000 employees and contractors, will lose access to its bank accounts, be unable to pay employees and vendors, and cease to operate as a going concern."); *id.* ("Pathak and Kurtin appear to be either intentionally terminating Onyx's existence or trying to force plaintiffs Stanislav Royzenshteyn and Roman Gerashenko . . . to the negotiating table to end this litigation. Either motive is improper and, in any circumstance, their actions, which violate the terms of the written agreements governing the

parties, must be enjoined in order to save Onyx and the jobs of its employees.").) Moreover, Daniel Ginzburg's Certification in support of the TRO application in the State Court Litigation makes clear that Onyx was represented by separate counsel, who had refused to file the application. (*See* ECF No. 97-3 at 105-06 ("Onyx has counsel in this matter, Daniel J. O'Hern, Jr., Esq., of the Byrnes O'Hern & Heugle firm. However, Mr. O'Hern is unable to submit this Application on Onyx's behalf because he has been cautioned by counsel for defendants Prashant Pathak and Carey Kurtin, both of whom are owners of defendant Onyx Enterprises Canada Inc. *and* directors of Onyx, that they will not approve of this filing, despite the impending irreparable harm to Onyx.") (emphasis in original).) As a result, the Court rejects OEC's contention that pursuing derivative relief "underscores [the Ginzburg Defendants'] culpability." (ECF No. 104 at 18.)

Accordingly, the Court again finds that OEC cannot rely on allegations that the Ginzburg Defendants sought to enjoin OEC from acting in the State Court Litigation, including the application for a TRO in the name of Onyx as a nominal defendant.

### C.    Tortious Interference (Counts Four, Five, and Six)

The Ginzburg Defendants argue that the SAC fails to state a claim for tortious interference with contract because it does not plausibly allege malice. (ECF No. 97-2 at 19.) The Court previously dismissed OEC's tortious interference claims against the Ginzburg Defendants on this basis, and it will do so again here. *See Onyx Enters. Canada, Inc.*, 2025 WL 62834, at *14.

To assert a claim for tortious interference with a contract, OEC must allege that "(1) [it was] a party to an existing contractual relationship; (2) Defendants intentionally interfered with that contractual relationship; (3) the interference was undertaken with malice; and (4) Plaintiff[ ] suffered damages resulting from the interference." *D'Urso v. BAMCO, Inc.*, Civ. No. 22-3723, 2023 WL 5623945, at *6 (D.N.J. Aug. 31, 2023); *Vosough v. Kierce*, 97 A.3d 1150, 1160 (N.J. Super. Ct. App. Div. 2014); *Dello Russo v. Nagel*, 817 A.2d 426, 434 (N.J. Super. Ct. App. Div.

13

2003); *DiMaria Const., Inc. v. Interarch*, 799 A.2d 555, 560 (N.J. Super. Ct. App. Div. 2001). "In formulating this definition of the cause of action, New Jersey courts have relied on the Restatement (Second) Torts §§ 766A and 766B." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1167 (3d Cir. 1993); *Nostrame v. Santiago*, 61 A.3d 893, 900-01 (N.J. 2013) (citing the Restatement (Second) Torts § 766 for elements of tortious interference with a contract claim).

"A claim for tortious interference with the performance of a contract must be based, in part, on facts claiming that the interference was done intentionally and with malice." *Micro Image Techs., Inc. v. Olympus Corp. of the Americas*, Civ. No. 20-18781, 2022 WL 17132156, at *4 (D.N.J. Nov. 22, 2022). The interference is intentional "if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action." *Micro Image Techs., Inc.*, 2022 WL 17132156, at *4 (quoting Restatement (Second) of Torts § 766A cmt. e (1979)). The interference is malicious when "the harm was inflicted intentionally and without justification or excuse." *Id.*; *see also* Restatement (Second) of Torts § 766 cmt. s ("[W]hat is meant is not malice in the sense of ill will but merely 'intentional interference without justification.'"). "'[V]iolence, fraud, intimidation, misrepresentation, criminal or civil threats, and/or violations of the law' constitute malice" as compared to "sneaky" or "underhanded" acts, which do not. *D'Urso*, 2023 WL 5623945, at *6 (quoting *Nostrame*, 61 A.3d at 902 (collecting cases)) (internal quotation marks omitted).

The Ginzburg Defendants argue that because the Court found that the FAC lacked allegations of malice, any viable assertion of malice must be found in the newly added allegations to the SAC. (ECF No. 97-2 at 21.) OEC counters that "[t]he Court must look to the entire context of the [SAC], which, when read together, provide more than enough allegations to support a finding of malice at this stage of the case." (ECF No. 104 at 20.) While the Court agrees with

14

OEC that the SAC must be read as a whole and in the light most favorable to OEC, the new allegations in the SAC are a reasonable starting point for the Court's analysis. Upon a review of those allegations, and in the context of the entire SAC when read as a whole, the Court agrees with the Ginzburg Defendants that OEC does not plausibly allege malice.

In dismissing OEC's tortious interference claims against the Ginzburg Defendants in the FAC, the Court noted that "[a]part from conclusory statements that the Ginzburg Defendants acted intentionally and without justification or excuse, OEC has failed to sufficiently plead that filing a state court complaint on behalf of a client and prosecuting those claims in furtherance of the client's interests is without justification or excuse." *Onyx Enters. Canada, Inc.*, 2025 WL 62834, at *14.

The SAC is similarly lacking in factual allegations demonstrating malice. To the extent OEC's allegations are not barred by the litigation privilege, as discussed above, OEC's allegations are too conclusory to state a plausible claim for relief. (*See, e.g.*, ECF No. 85 ¶ 312 ("At all times, the Ginzburg Defendants were unquestionably conflicted due to their relationship with Onyx, of which OEC was the majority owner, were aware of OEC's rights under the Investors Rights Agreement, and knew or should have known that there was no justification to interfere with OEC's rights under the Investors Rights Agreement. As a result, the Ginzburg Defendants had no excuse for their individual wrongful actions taken to assist Royzenshteyn and Gerashenko's vendetta against OEC and its designated directors."); ¶ 325 ("In combination with Royzenshteyn and Gerashenko, Ginzburg and Ginzburg Law intentionally and with no valid justification or excuse sought to limit OEC's exercise of its rights under the COI, including but not limited to receipt of the Liquidation Preference as the result of the occurrence of a Deemed Liquidation, resulting in the material breach of Onyx's contractual obligations under the COI and preventing OEC from obtaining reasonably certain economic advantages."); ¶ 326 ("Ginzburg and Ginzburg Law were

15

aware that there was no justification for interfering with OEC's exercise of its right to receive the Liquidation Preference upon the occurrence of a Deemed Liquidation and that so interfering was substantially likely to cause OEC to be unable to exercise its rights under the COI, causing it to lose a significant economic benefit."); ¶ 330 ("The Ginzburg Defendants, acting with malice, knew that they had no justification, permission, or excuse to file [a motion for a TRO in the State Court Litigation] on behalf of Onyx, as shown by the fact that Onyx had other counsel in the State Court Litigation who had expressly declined to intervene.").) *See Mu Sigma, Inc. v. Affine, Inc.*, Civ. No. 12-1323, 2013 WL 3772724, at *5 (D.N.J. July 17, 2013) ("[S]imply reciting the definition of malice is not the equivalent to pleading facts alleging the existence of malice.").

Moreover, the allegations in the SAC do not plausibly allege that the Ginzburg Defendants—who were representing the interests of their clients, Royzenshteyn and Gerashenko—acted without justification in prosecuting the State Court Litigation. *See Pasqua v. Cnty. of Hunterdon*, Civ. No. 14-4203, 2016 WL 4253958, at *20 (D.N.J. Aug. 11, 2016), *aff'd*, 721 F. App'x 215 (3d Cir. 2018) (noting that to plead malice for a tortious interference claim, a plaintiff "must allege more than mere negligence or self-interest; rather, [the p]laintiff[] must allege some intentional act that was done for the express purpose of depriving [the p]laintiff[] of their expected economic gain, not simply for the [defendant's] own financial position").

Even when viewed in the light most favorable to OEC, the SAC does not plausibly allege that the Ginzburg Defendants engaged in conduct that was "fraudulent, dishonest, or illegal" in connection with the representation of Royzenshteyn and Gerashenko. *See Som Maior Audio E Video, Ltda. v. Creston Elecs., Inc.*, Civ. No. 20-19864, 2021 WL 5770259, at *4 (D.N.J. Dec. 3, 2021) (quoting *Lamorte Burns & Co. v. Walters*, 770 A.2d 1158, 1171 (N.J. 2001)). Moreover, the Court remains satisfied that this case does not present the "rare" or "unusual" circumstance in

16

which a tortious interference claim may be brought based on an attorney-client relationship. *Onyx Enters. Canada, Inc.*, 2025 WL 62834, at *14; *Nostrame*, 61 A.3d at 896. And as previously discussed, OEC's allegations concerning the Ginzburg Defendants' allegedly conflicted representation in the State Court Litigation are too conclusory to support such a claim.

Accordingly, OEC's claims for tortious interference with contract (Counts Four, Five, and Six) will be dismissed with prejudice.[9]

### D.   Civil Conspiracy (Count Seven)

The Ginzburg Defendants argue that OEC's civil conspiracy claim fails to the extent it relies on the tortious interference claims in the SAC. A civil conspiracy arises when "a combination of two or more persons act[ ] in concert to commit an unlawful act, or to commit a lawful act by unlawful means." *Banco Popular N. Am.*, 876 A.2d at 263 (citation omitted). "Civil conspiracy claims under New Jersey law require the plaintiff to plead a viable underlying tort claim." *Dill v. Yellin*, 725 F. Supp. 3d 471, 484 (D.N.J. 2024) (finding that a breach of contract claim is "not a tort claim and therefore cannot serve as the predicate for a civil conspiracy claim.").

This Court previously dismissed OEC's civil conspiracy claim against the Ginzburg Defendants to the extent it relied on (1) Royzenshteyn and Gerashenko's alleged breaches of fiduciary duty, and (2) the Ginzburg Defendants alleged tortious interference with OEC's contracts. *See Onyx Enters. Canada, Inc.*, 2025 WL 62834, at *15-16. As the Court explained, these claims failed because the Court dismissed the underlying tort claims. *Id.*; *see also Nype v. Spitz*, Civ. No.

---

[9]   Since the Court finds that OEC has not plausibly alleged the Ginzburg Defendants acted with malice, the Court need not reach the issue of whether OEC meets the elements of proximate cause and damages. And because the Court finds that further amendment would be futile, it dismisses these claims with prejudice. *See Trumper v. GE Cap. Retail Bank*, 79 F. Supp. 3d 511, 513 (D.N.J. 2014) ("[The p]laintiff has already amended her pleading once, and despite being given a second bite at the apple, she has been unable to cure the deficiencies in her original [c]omplaint. This suggests that further amendment would be futile.").

20-13680, 2022 WL 329321, at *6 (D.N.J. Feb. 3, 2022) ("If there is no valid underlying tort, a claim for civil conspiracy must be dismissed."). Here, the Court has dismissed the tortious interference claims against the Ginzburg Defendants, so the Court will dismiss OEC's civil conspiracy claim to the extent it relies on the Ginzburg Defendants' alleged tortious interference with contract.[10] However, the Ginzburg Defendants do not argue that OEC's civil conspiracy claim must be dismissed insofar as it relies on Royzenshteyn and Gerashenko's alleged tortious interference with contract. The Court previously allowed this aspect of the claim to proceed, and it will do the same here.

Accordingly, OEC's civil conspiracy claim against the Ginzburg Defendants (Count Seven) is dismissed with prejudice to the extent it relies on the Ginzburg Defendants' alleged tortious interference with contract (Counts Four, Five, and Six).

### E.  Aiding and Abetting (Count Eight)

Under New Jersey law, a party may be liable for the tort of aiding and abetting where "one party 'knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.'" *State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.*, 904 A.2d 775, 782 (N.J. Super. Ct. App. Div. 2006); *see also Bell Container Corp. v. Palagonia Bakery Co. Inc.*, Civ. No. 19-6545, 2022 WL 2439532, at *4 (D.N.J. July 5, 2022). An aiding and abetting cause of action may exist when that claim is predicated on another tort, such as fraud or breach of a fiduciary duty. *See, e.g.*, *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 415 (3d Cir. 2003) (recognizing under New Jersey law a claim of aiding and abetting fraud).

---

[10]  Although the FAC included breach of fiduciary duty claims against Royzenshteyn and Gerashenko, the SAC includes no such claims. As a result, OEC cannot sustain a civil conspiracy claim based on any underlying breach of fiduciary duty.

18

As with OEC's claim for civil conspiracy, the Court previously dismissed OEC's aiding and abetting claim against the Ginzburg Defendants to the extent it relied on OEC's claims for breach of fiduciary duty against Royzenshteyn and Gerashenko and on the tortious interference claims against the Ginzburg Defendants. *Onyx Enters. Canada, Inc.*, 2025 WL 62834, at *16-17. Because the Court again dismisses OEC's tortious interference claims against the Ginzburg Defendants, it reaches the same conclusion here. *See Avataa USA, LLC v. Yaminsky*, Civ. No. 24-6314, 2025 WL 892716, at *8 (D.N.J. Mar. 24, 2025) ("It is well-settled law that when a plaintiff brings a civil conspiracy or aiding and abetting claim, [they] must allege a viable underlying tort.").

Accordingly, OEC's claim for aiding and abetting against the Ginzburg Defendants (Count Eight) will be dismissed with prejudice to the extent it relies on OEC's claims for tortious interference against the Ginzburg Defendants (Counts Four, Five, and Six).

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, the Ginzburg Defendants' Motion to Dismiss (ECF No. 97) is **GRANTED in part** and **DENIED in part**. OEC's claims for tortious interference with contract against the Ginzburg Defendants (Counts Four, Five, and Six) will be dismissed with prejudice in their entirety. OEC's claim against the Ginzburg Defendants for civil conspiracy (Count Seven) and aiding and abetting (Count Eight) will be dismissed to the extent they rely on the Ginzburg Defendants alleged tortious interference with contract (Counts Four, Five, and Six). An appropriate Order follows.

Dated: September 10, 2025

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE